## Zerr v. Scott

*Stephen B. Lieberman,* for Berks County.
*William R. Bernhart,* for defendants.

SCHAEFFER, *P.J.,* December 5, 1985—Plaintiff (Zerr) seeks an order from us appointing an attorney to represent him in these proceedings, free, without charge to him.[1] We are satisfied that he is indigent and that no member of the bar is willing to take his case on a contingent fee or pro bono basis.[2] He is, therefore, a poor person "not of ability nor power to sue . . . for the redress of injuries and wrongs."

We find Zerr comes within the provision of the Act of 11, Henry VII, chap. 12 (1494),[3] and that the

---

1. Mr. Senville's appearance for plaintiff has been entered for the limited purpose of litigating plaintiff's right to free counsel. Because of the serious public policy question presented, we have allowed him to do so.

2. Since our opinion of December 5, 1984 in this matter, reported in 77 Berks Co. L.J. 49, the Berks County Bar Association advertised plaintiff's need for counsel. No lawyer responded.

3. This statute remains in effect as a part of the Common Law of Pennsylvania. Report of the Judges, 3 Binney 617 (1808); Thompson v. Garden Court, Inc. 277 Pa. Super. 460, 419 A.2d 1238 (1978); Madden v. City of York, 59 D. & C. 2d 367 (1972); Cowan v. City of Chester, 2 Delaware County Reports 234 (1884); See Mitak v. Ste-Mel Signs, Inc., 222 Pa.

statute requires us, sitting with the discretionary power in this limited area of a Chancellor of England,[4] to determine whether or not he should have free counsel appointed for him.

While there may be some question as to whether the above-mentioned statute meets our present day concepts of constitutionality (it concerns itself with

---

Super. 395, 294 A.2d 813 (1972); 1 Pa.C.S. §1503(a); Act of January 28, 1777, 1 Sm. L. 429, chapter 726.

4. Section 4 of the Schedule to the Judiciary Article of our present Pennsylvania Constitution provides that the courts of common pleas shall exercise the jurisdiction which had been vested in the courts of common pleas under the Constitution of 1874. That Constitution in Article V, section 20, empowered the courts of common pleas to have and exercise such chancery powers as were previously vested in them. Before 1874 the common pleas courts, in addition to the enumerated chancery powers, had such other powers as the general assembly had found necessary and continued to have the powers previously exercised; Pa. Constitution of 1776, section 24; Pa. Constitution of 1838, Art V, sec. 6. The legislature by the Act of January 28, 1777, continued in force "such of the statute laws of England, as to have heretofore been in force in the said province (Pennsylvania)." The Supreme Court concluded in Report of Judges, 3 Binney 617 (1808), that the Statute of 11 Henry VII, chapter 12 should remain in effect in Pennsylvania. From this, we conclude that not only is the Statute of 11 Henry VII, chapter 12 still in force in Pennsylvania, but also that the power of the Chancellor, in his discretion, to assign "learned counsels and attorneys at law" for an indigent plaintiff is a power which passed to the courts of common pleas. For the Legislature of 1777 to have continued the Statute of 11 Henry VII, chap. 12 in force, without giving the discretionary power of the chancellor to the courts of common pleas, would have been to continue the statute without preserving the means for its application, an absurd and unreasonable result. We will not construe the statute of 1777 to reach such a result, hence our conclusion that by necessary implication the Legislature found such discretionary power necessary and by the Statute of 1777 gave a common pleas judge the discretionary power to appoint an attorney for plaintiff. 1 Pa.C.S. §1922(1).

poor plaintiffs but ignores poor defendants, for example), no party has challenged the constitutionality of the statute in these proceedings, and we cannot properly challenge it sua sponte on constitutional grounds. Wiegand v. Wiegand, 461 Pa. 482, 337 A.2d 256 (1975); Commonwealth v. Boerner, 281 Pa. Super. 505, 422 A.2d 583 (1983). Thus, we will apply the statute as written.

We accept as fundamental that no lay person can adequately represent himself pro se in civil litigation. For a lay person to have meaningful access to our courts, he must have a skilled lawyer to represent him.

We also accept as fundamental that the immense power of the state cannot be placed, without limitation, in the hands of any self-styled plaintiff to sue any person on whatever grounds he may choose. The cost of defending even the most frivolous lawsuit can be huge at the present time. To give an indigent who desires to sue the financial power of the state to support and pay for his litigation, makes the indigent's litigation the equivalent of state action. Since no state can take action against a person without due process of law,[5] an absolute and untrammeled right in an indigent plaintiff to sue at state expense whomever and whenever he may choose could violate the due-process rights of the person sued. The normal restraints placed upon a nonindigent person who is contemplating the filing of a civil suit are not present when an indigent contemplates suit. The indigent is by definition without assets and he need not fear a judgment for court costs and/or attorney's fees against him nor even a judgment against him for malicious use or misuse of process. Furthermore, not having to pay for the

---

5. 14th Amendment, Constitution of the United States.

litigation, the indigent need not determine whether the costs of litigation will exceed or outweigh the litigation's expected benefits.

Therefore, we must exercise our discretion in such a way that we protect the right of indigent plaintiff to sue for the redress of a remediable wrong and the right of defendant to be free from frivolous lawsuits.

We find this can best be done by screening plaintiff's case to determine:

(a) whether the case has a reasonable possibility of success; and

(b) whether a reasonable person of moderate means would embark on the litigation.[6]

In applying this test to the case at bar, we turn first to the record of these proceedings.[7] From that record we note that the basis of Zerr's complaint is that defendant (Stott), an attorney at law, failed to perform as an effective and competent lawyer after Zerr employed Stott on January 10, 1977 to defend him in a criminal case then pending against him.[8] Zerr also complains that Stott failed or refused to prosecute Zerr's appeal from a guilty verdict against him in that proceeding, filing motions for a new trial on July 21, 1977, but withdrawing them on August 14, 1978.

---

6. The present British legal system provides a screening committee of private lawyers who must certify that the indigent plaintiff's case has potential merit and that a man of moderate means would embark on the litigation, before a free lawyer is provided for him. "Should Indigent Civil Litigants in Federal Courts have a Right to Appointed Counsel?" 39 Washington and Lee Law Review 1267, at 1273.

7. We properly take judicial notice of the full court record in this case at bar.

8. Commonwealth v. Zerr, no. 77040701-7, filed in the court of common pleas.

We take judicial notice of the record in the criminal proceeding against Zerr, as such action was a proceeding in this court. McCormick on Evidence, section 330 at 765-766 (2nd Ed., 1972).

From that record we ascertain that the post-verdict motions which Stott filed for Zerr made no reference to the grounds upon which Zerr ultimately obtained relief. We note that Zerr obtained a reversal of his conviction and a new trial on the basis of Stott's ineffectiveness at trial in failing to request a cautionary instruction after a Commonwealth witness accused Zerr of having engaged in unrelated criminal activity. In this situation, Stott's ineffectiveness had to have taken place on or before the last day of the trial, July 11, 1977.

If Zerr had good grounds for post-verdict relief and Stott failed to file them and was in some way negligent or in breach of contract in failing to do so, his failure would relate to the last day for filing such motions, that is, to July 21, 1977, the 10th day after the verdict. Pa.R.Crim.P. 1123, effective July 1, 1977.

Zerr does not allege that any of the grounds for post-verdict relief which Stott did file, had merit and would have resulted in post-verdict relief if properly pursued and argued. In point of fact, they were refiled by Zerr's subsequent defense counsel, argued and denied. Therefore, Stott's withdrawal of Zerr's post-trial motions did Zerr no harm and their withdrawal could not have been an actionable wrong.

Thus, all of Stott's alleged failures had to have occurred on or before July 21, 1977, a Thursday.

The applicable statute of limitations under Pennsylvania Law is uncertain. The limitation conceivably could be the two-year period under 42 Pa.C.S. §5524, the four-year period under 42 Pa.C.S. §5525,

or the six-year period under 42 Pa.C.S. §5527. However, there is clearly no applicable statute having a time limitation of more than six years. Thus, even if we consider the six-year statute of limitations applicable, the last day on which Zerr could have filed his action in the case at bar was July 21, 1983, a Thursday. He actually filed his action on July 25, 1983. The causes of action pleaded in Zerr's complaint are barred by the statute of limitations and Zerr has no reasonable possibility of success in his litigation.

No reasonable person of modest means would have filed the suit.

Accordingly, we decline to appoint a lawyer to represent Zerr, free, without cost to him, for the purpose of pursuing a stale claim.

We enter the following

### ORDER

And now, this December 5, 1985, plaintiff's petition for the appointment of counsel in these civil proceedings is denied.